LARIO, J.T.C.
The question raised in this case is whether the interruption of an agricultural use by reason of excavation and sale of mineral materials, with the intent to resume the agricultural activity at a future date after the excavation ceases, is sufficient to trigger the farmland roll-back assessment provisions of N.J. S.A. 54:4-23.8.
The taxing district’s assessor pursuant to N.J.S.A. 54:4-23.9 and N.J.S.A. 54:4-63.12, et seq. filed an application with the Mercer County Board of Taxation for farmland roll-back assessments against the subject property in the sum of $35,900 for the tax year 1984 and each of the two prior years. After hearing, the county board issued its judgment denying the roll-back assessments whereupon the taxing district filed this appeal. In these proceedings, the quantum of assessment is not disputed; the sole question being whether the taxing district is entitled to application of roll-back tax assessments.
*115 The parties have stipulated the following facts: The property in question is owned by the Estate of Margaret C. Lyons and consists of 71.8 acres of unimproved land situated on the Yardville-Allentown Road in Hamilton Township, Mercer County, and is identified on the tax map as Block 625, Lot 10Q.
For the tax years 1982, 1983 and 1984, which are the tax years at issue in this litigation, 70 of the 71.8 acres were qualified and assessed as farmland under the Farmland Assessment Act of 1964. On July 27, 1983, pursuant to the provisions of N.J.S.A. 54:4-23.1, el seq., the taxpayer filed an application for valuation, assessment and taxation of land under the Farmland Assessment Act of 1964 with the assessor of Hamilton Township which application was approved on October 1, 1983. The approved application alleged that 70 acres were devoted to agricultural or horticultural use, with 1.8 acres of the total parcel not being devoted to such use. Of the 1.8 acres which were not qualified, 1.3 of those acres consisted of lands which had for years been devoted to a mining operation, from which certain gravels and other mineral materials were excavated.
During the calendar year 1984, the excavation operation on the subject property expanded, and an additional 14.12 acres of previously-qualified farmland was placed under excavation for the purpose of extracting mineral materials. The taxpayer does not question the right of the taxing authority to remove the 14.12 acres being excavated for mineral materials from farmland qualification for as long as the excavation continues on that portion of the property. Taxpayer does contend, however, and the municipality cannot dispute, that the taxpayer intends to return the property under excavation to agricultural use as soon as the excavation for mineral materials ceases.
Plaintiff presented no additional evidence, relying upon the facts stipulated. Other particulars not stipulated between the parties but alleged by defendants to merit consideration and which were presented at the trial are as follows: The son of Margaret C. Lyons, deceased, testified that he is the co-executor and co-trustee of his mother’s estate; that he was born and *116 raised on the farm in question; and, that it had been utilized as a farm for all of his 65 years. There are 22 heirs, of which five are recipients of the income, and the remaining 17 will receive the corpus. He stated that the land, which had many high and low elevations, consisted of much clay. The low land accumulated water which interfered with its use for farming. In order to get the proper drainage for the low spots, thereby improving the land for the raising of better crops, for many years the soil from the high places was removed and transferred to the low portions.
In 1976 defendants filed a plan with the Mercer County Soil Erosion Control District, which was approved, showing elevation of the ground before and after, with the intent that upon completion the land would be basically level and the altered portion would be temporarily seeded and returned to farmland.
Over the years defendants did not actually perform the major leveling but instead it was done by general highway contractors and others to whom the road materials were sold. The extent of the mineral extraction that took place during those years depended upon the need in the area for the kind of fill that existed on this land. The only time the removal of a large amount of material occurred (or can be expected to occur) was when a highway was being constructed nearby.
For a period of 15 to 20 years prior to 1983 approximately one and one-third acres at a time was open. In 1983 and continuing into 1984, because of the construction of nearby highways 1-95 and 1-295, defendants entered into a contract with Hess Brothers, a highway contractor.[1] The contract resulted in the expansion of the mineral excavation operation to approximately 14.12 acres. Physical excavation and removal of the minerals from the property were done completely by the contractor who thereafter also leveled the ground. During 1984 Hess Brothers was the sole contractor, but in some previous years there were *117 as many as 10 to 15 different contractors who removed smaller loads of material.
In 1984 the total land area, upon which there was no agricultural growth, was that excavated area, which approximated 16 acres. When the mineral extraction process on these 16 acres is completed, it is defendants’ intention that all of the property will be farmed.
The operative statute controlling the issue addressed in this matter is N.J.S.A. 54:4-23.8, referred to as the roll-back statute which directs:
When land which is in agricultural or horticultural use and is being valued, assessed and taxed under the provisions of this act, is applied to a use other than agricultural or horticultural, it shall be subject to additional taxes, hereinafter referred to as roll-back taxes.
It is the municipality’s position that excavation of any portion of the subject property for the purposes contracted by the estate sufficiently changes the use of the land so excavated to subject that portion to the provisions of the roll-back statute.
Contrary thereto, taxpayers contend that a temporary interruption of an agricultural use with the intention of resuming agricultural purposes is not sufficient to trigger the roll-back provisions of the statute, since the primary use of the subject parcel remains agricultural and the excavation of mineral materials represents only a temporary deviation from that use rather than a change in use as contemplated by the statute. Defendants claim this interpretation is especially true when the change, besides being temporary, will also have the ultimate effect of providing the State with lands more valuable for agricultural purposes, one of the primary purposes of the act.
To bolster their position defendants point to a lack of conversion for residential or commercial development or of pure speculation and it emphasizes the present intention of the owners to return the property to agricultural use. In support of its contention that the Legislature has incorporated the roll-back tax provisions into the act in order to protect municipalities from land speculation, they rely upon Gardiner v. State, 196 N.J.Super. 529, 532, 483 A.2d 442 (Law.Div.1984), *118 Centex Homes of N.J. v. Manalapan Tp., 4 N.J.Tax 599 (1982) and Andover Tp. v. Kymer, 140 N.J.Super. 399, 356 A.2d 418 (App.Div.1976). Defendants also rely upon Jackson Tp. v. Paolin, 181 N.J.Super. 293, 3 N.J. Tax 39, 437 A.2d 344 (1981) for their claim that mere non-devotion of land to farming does not trigger the imposition of roll-back taxes where it is intended that the agricultural use be resumed.
Taxpayers’ proposed conclusion is not supported by either the wording of N.J.S.A. 54:4-23.8 or reported case law interpreting it.
Although the purpose leading to adoption of the rollback statute was to reimburse a municipality for lost revenue and it was originally proposed that roll-back taxes be imposed upon sale of land to speculators, the final version as adopted by the Legislature does not so direct. The purchase of qualified farmland by a land speculator does not alone subject the land to roll-back taxes; change in use must occur regardless of change in ownership. Andover Tp. v. Kymer, supra, 140 N.J.Super. at 403, 356 A.2d 418. N.J.S.A. 54:4-23.15 specifically directs:
Continuance of valuation, assessment and taxation under this act shall depend upon continuance of land in agricultural or horticultural use and compliance with the other requirements of this act and not upon continuance in the same owner of title to the land. Liability to the roll-back tax shall attach when a change in use of the land occurs but not when a change in ownership of the title takes place if the new owner continues the land in agricultural or horticultural use, under the conditions prescribed in this act.
This test applies also to a separation or split-off of a part of the land. N.J.S.A. 54:4-23.16. Nor is the roll-back statute triggered solely when the land’s use is changed to residential, commercial or industrial development. See Hinck v. Wall Tp., 3 N.J.Tax 96 (1981) wherein it was held that land which changed from qualified farmland to use as a park by a municipality was subject to farmland roll-back taxes. The sole criterion is the use of the land. Any change, whereby the land is no longer devoted to actual agricultural or horticultural use, subjects the land to roll-back taxes. N.J. Turnpike Auth. v. Washington Tp., 137 N.J.Super. 543, 350 A.2d 69 (App.Div. 1975), aff’d o.b. 73 N.J. 180, 373 A.2d 652 (1977).
*119 Jackson Tp. v. Paolin, supra, cited by the taxpayers as support for their claim that temporary interruption is not a change of use, is distinguishable from the instant case; the facts differ significantly. There, the Tax Court held that land which previously qualified as farmland but which, by reason of the ill health of the farmer who failed to sufficiently farm the land to continue its qualification, did not thereby apply his property to a use other than agriculture; therefore, it was not a change in use within the intent of the roll-back statute. Id., 181 N.J.Super, at 293, 3 N.J.Tax at 39, 437 A.2d 344. In Paolin testimony was presented that crops were planted and sales made but the trial judge found that the minimum qualifications of the act had not been met; however, the land was not actively put to any other use. Id., 181 N.J.Super. at 303, 3 N.J. Tax at 49, 437 A.2d 344. Here, we have an active conversion from an agricultural use to mineral excavation, a land use that clearly is neither agricultural nor horticultural. Taxpayers’ intention to return the land to agricultural use in an alleged improved condition cannot be equated with a farmer’s leaving certain plots of his land fallow for a period of time in order to improve the soil for subsequent crops. Leaving land fallow is not a change of use as intended by the roll-back statute, but instead, it is comparable to rotating crops and under correct circumstances it is a prudent and recommended agricultural devotion. Mineral excavation is a use completely foreign to agricultural devotion.
Although the mining excavation conducted in the present ease will result in leveling the property which may have the ultimate effect of providing a more productive agricultural land, this is not the primary reason for the change in use. The primary reason for the excavation is the sale of the minerals for the production of income for distribution to the five income beneficiaries under the trust. The future agricultural land improvements resulting are incidental to the sale of the minerals.
*120 Nevertheless, the intended future use is not the test; what is crucial in farmland assessment litigation is the actual present use to which the property is put. N.J. Turnpike Auth. v. Washington Tp., supra, 137 N.J.Super. at 551, 350 A.2d 69; Andover Tp. v. Kymer, supra; and, as Judge Andrew of this court held in Centex Homes of N.J. v. Manalapan Tp., supra:
That actual or present use and not intention ... is the critical element is particularly evident in two sections of the Farmland Assessment Act. [4 N.J. Tax at 609, citing N.J.S.A. 54:4-23.8 and1. -23.15]
A fair reading of the amendment leads to the conclusion that continuation of farmland treatment depends upon actual or current use rather than intended or future use. [Id. at 611]
The roll-back statute, N.J.S.A. 54:4-23.8, is clear and unambiguous. Where statutory language is plain, unambiguous and uncontrolled by another part of the act or other legislation, a court may not give it a different meaning. Spiewak v. Rutherford Bd. of Ed., 90 N.J. 63, 74, 447 A.2d 140 (1982). When previously qualified farmland ceases to be devoted to an agricultural or horticultural use and it is applied to a use other than agricultural or horticultural, even though the change is temporary and in the future it will be returned to agricultural use in an improved condition, a change of use within the intent of the roll-back statute has occurred which triggers the imposition of roll-back taxes. Since the subject land’s use was converted from actively devoted farmland to mineral extraction, a use which is neither agricultural nor horticultural, roll-back taxes are mandated.
The judgment of the county board is reversed and the rollback taxes originally instituted by the assessor for the tax year 1984 and the two prior years will be reinstated as follows:
*121 Non-qualified value $42,350
Less farmland qualified value 6,450
Roll-back assessment $35,900

 It was stipulated that while under contract Hess Brothers was not engaged in either agricultural or horticultural activity.