LARIO, J.T.C.
The question raised by this appeal is whether defendant’s land, which for the tax years 1982, 1983 and 1984 had been assessed as qualified under the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1, et seq. (the act), was subsequently “applied to a use other than agricultural or horticultural” thereby subjecting it to rollback taxes as mandated by N.J.S.A. 54:4-23.8 (the rollback statute). The Burlington County Board of Taxation answered this question negatively and entered judgment denying Burlington Township’s application for rollback taxes thereby resulting in this appeal.
The subject property is an irregular tract of vacant, wooded land consisting of approximately 90 acres. It is located at the intersection of Sunset and Rancocas Roads, Burlington Township and is identified on the tax map as Block 109, Lots 1 and 7.
Pursuant to the act the land had been assessed as qualified farmland at $36,000 for each of the tax years 1982, 1983 and 1984. The taxing district claims that a change in use occurred in 1984, therefore, it requests rollback assessments of $549,000 *277 which added to the original farmland assessment totals $585,-000 for each year. The taxpayer defends initially by denying that the subject property was not being used for agricultural or horticultural purposes; and secondly, that there was no change in use of the property such as to trigger the rollback tax provision of the rollback statute.
The taxing district’s assessor testified as follows: In midyear 1983 he was the newly appointed assessor for Burlington Township. Shortly thereafter he received the taxpayer’s application for farmland assessment for the tax year 1984 filed in accordance with N.J.S.A. 54:4-23.6 which requires a separate application to be filed by August 1 of each pretax year. The application listed six acres as being cropland and the remainder as woodland harvested. With respect to the woodland no evidence of a forestry management, a silviculture program nor any other documentation was presented to substantiate the claim of woodland harvested. Because N.J.S.A. 54:4-23.13b directs that notice of disallowance of an application must be forwarded to the owner by November 1 of the pretax year, he decided to visit the property to ascertain if it qualified.
On August 29, 1983 and October 3, 1983 he completely walked the property. On both occasions he observed that located toward the middle of the property was a section, approximately six to eight acres, which appeared to have had crops planted thereon several years earlier, however, the area was now overgrown with weeds and some small young trees. During his walks through the woodland section he noticed evidence of a few trees having been cut.
As a result of his observation of the property on these two occasions he had a strong suspicion that no farmland activity as defined by the act was taking place on this property; however, in that he only recently had been appointed assessor and because the property had received farmland assessments for prior years, he presumed that there had been farmland activity “at least up until that point” and, in spite of his suspicion he *278 approved the farmland assessment to be applied for the tax year 1984.
In 1984 he visited and viewed the property on three separate occasions: on April 4 and May 17, which were before his receipt of taxpayer’s application, and on December 12 which was after its receipt. On each of these occasions he again walked the entire property. He described the woodland as having two or three trails which can be used to get through to the heavily wooded portion. He not only walked the trails but also went off into the non-trailed portion looking for tree cuttings, evidence of places where vehicles or tractors may have gained access for removal of cut trees, and any other signs to indicate woodcutting activity. He found none. As a result of his previously having owned woodland property for six years during which he had cut trees and sold an average of 50 to 80 cords of wood yearly, he stated he was an experienced woodcutter. Based on his experience he claimed that by observing the discoloration of the cut portion of the tree stumps and the color and dryness of its sap, he could identify whether a tree had been cut earlier than six to eight months. Additionally, if a tree had been cut in excess of a year, some rotting will appear on the stumps and after three or four years its rotting will have increased markedly and its stump will exhibit evidence of decomposition. The brittleness of small branches which are removed from cut trees and usually left at the site is also evidence of how recently a tree has been cut in that when stepped upon, such branches would not crack until they had laid there for at least a year; if less than a year, they merely bend.
On no visits did he notice evidence of any newly cut trees or stumps of trees that had been cut within one year. At no time did he find any discernable evidence of traditional planting of crops, harvesting of crops or plowing of fields. He found the condition of the property on the three 1984 visits to be substantially the same as existed on his two examinations the prior year. On his April and May 1984 inspections he, again, observed weeds and other types of non-crop shrubbery growing in the cleared middle section. On his return visit in December *279 1984 the weeds were still there except, now, they were in a withered condition which indicated no farming activity between visits. During his 1984 inspections there still were many three-to six-foot, and even smaller, trees growing in the middle section.
In July 1984, after he received from Edythe Messer (Messer) the taxpayer’s application for 1985 farmland qualification, he wrote a letter to her enclosing a “Farm Income and Activity” affidavit, prepared and recommended for use by the State, which he requested be completed and returned together with written verification of income from the property’s products such as sales slips, receipts or cancelled checks. The affidavit was returned signed by Messer and by David King who was identified as a tenant farmer. The affidavit described the property to be primarily a tree farm consisting of 84 acres of woodland and six acres of cropland harvested. The response to the request for “gross income for the year” was: “anticipated.” Messer advised that she was unable to obtain an affidavit from another tenant, James H. Gaul. In lieu thereof she enclosed copies of contracts entered into with him whereby he agreed to cut trees for the years 1980 through 1984. No sales slips, receipts or cancelled checks were included.
Not being satisfied, by his own observations and the information received from the owner, that the property sufficiently qualified for farmland assessment he denied the application for 1985. No appeal was taken from this denial. Thereafter, he filed with the county board an application for rollback taxes which was denied resulting in this appeal.
Messer testified herein as follows. The subject property had been purchased many years ago by a partnership, Messer Associates, which originally included her father-in-law. Upon his death, she and her husband purchased the father’s partnership interest. Her husband died in 1981 and she remained a *280 partner.[1] From the late 1970’s through 1984 the land was used for farming trees and throughout that period it had been assessed as qualified farmland under the act.
In 1981 David King and James H. Gaul separately had contracted with her and her husband for the right to cut trees and to sell the cut wood. After her husband’s death, she annually renewed the contracts with each. With the exception of the names and dates contained therein the contracts for each party for 1982, 1983 and 1984 were identical, the pertinent provisions of all six contracts being as follows:
King [Gaul] is desirous of entering upon the lands of Messer Associates known as Block 109, Lot 1 on the tax map of the Township of Burlington (hereafter “Land”) for the purpose of cutting wood during the year 1982 [1983, 1984] for the resale of firewood to retail purchasers.
Associates are desirous of entering into a contract with King [Gaul] for the purpose of the cutting of such wood for sale, in order to earn income and further in order to comply with the statutory requisites for obtaining a-Farmland Assessment for the land.
NOW, THEREFORE, in consideration of the above presents, the parties agree as follows:
King [Gaul] agrees to cut wood and take from the land at least ten (10) cords of wood each year during 1982 [1983, 1984], King [Gaul] will pay a minimum price (fluctuating according to market) of $75.00 per cord. Such payment shall be due upon receipt by King [Gaul] of invoices from Associates.
For the year 1984 King was granted the additional right to develop the six- to eight-acre center portion of the property for the purpose of growing hay. Also, in 1984 she gave to Mr. Conklin, a neighbor of the property, permission to develop 20 acres for general farming.
She claimed she received from King and Gaul for their rights $1,500 each year but that Conklin had not paid anything because before farming the land he was required to first receive permission from the township’s ecological committee. This permission was never received, therefore, he did no farming in 1984.
*281 Messer stated that between 1981 and 1984 she visited the property at least twice a year. She admitted she had no personal knowledge of whether any cropland had been harvested, however, each year she noticed that trees had been cut, though she did not know the number thereof. She stated that, during the years she was a partner, the intended and actual use of the property had not changed.
Neither King nor Gaul testified nor was any direct testimony of woodcutting or growing of crops presented. Other than the contracts with King and Gaul there was no evidence of any trees cut and sold, crops grown or moneys received.
The township claims that, although as of October 1, 1983 the property was granted farmland qualification for 1984, subsequently in the tax year 1984 the property was not actively devoted to agricultural or horticultural use, therefore, it is subject to taxation under N.J.S.A. 54:4-23.8 which provides:
When land which is in agricultural or horticultural use and is being valued, assessed and taxed under the provisions of this act, is applied to a use other than agricultural or horticultural, it shall be subject to additional taxes, hereinafter referred to as roll-back taxes, in an amount equal to the difference, if any, between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had the land been valued, assessed and taxed as other land in the taxing district, in the current tax year (the year of change in use) and in such of the 2 tax years immediately preceding, in which the land was valued, assessed and taxed as herein provided.
If the tax year in which a change in use of the land occurs, the land was not valued, assessed and taxed under this act, then such land shall be subject to roll-back taxes for such of the 2 tax years, immediately preceding, in which the land was valued, assessed and taxed hereunder. [Emphasis supplied]
The taxpayer counters that it produced sufficient evidence of continued agricultural activity at the subject premises in 1984 to rebut the testimony of the assessor. Taxpayer also alleges in any event that no change in use from 1983 was established; that the most that could be factually determined was that the land was inactive in 1984. Based thereon, she contends as a matter of law that mere proof of non-use of previously qualified farmland is not sufficient to trigger the rollback assessment under the statute. Additionally, she argues that the taxing district must establish there was a “change in use” from the *282 prior year, alleging, if this court finds the use of the land in 1984 is not different from its use in 1983, the rollback statute does not apply.
The testimony adduced by the assessor was definite, logical and credible and I accept same as given. Messer’s factual testimony does not contradict that given by the assessor. For the calendar year 1984 no direct evidence indicative of agricultural or horticultural activity was given. The contracts presented were executory only. There was no evidence that any, let alone ten, cords of wood had been cut or that any payments therefor had been received in 1984. It is inferred from King’s and Gaul’s failure to appear and testify and from the lack of other supporting evidence that the cuttings and sales contemplated by the agreements for 1984 did not occur. Messer acknowledged that in addition to the woodcutting contracts she had agreements with both King and Gaul whereby each agreed in consideration of $750 payable yearly to each of them “to look after the property.” The need for guarding this rural woodland was not indicated. She admitted that the income of $1,500 was never shown on her income tax returns nor was there any proof of partnership expenditures of $1,500 paid annually to protect her property. These alleged contracts were obviously “set-offs” without any intent that the obligations contained therein would ever be performed. It is apparent that the writings submitted as contracts were nothing more than a ruse to qualify the land for farmland assessment.
I find that during the calendar year 1984 there had not been cut on the subject property sufficient trees to produce an income of at least $500; and there was no attempt or intent to do so; nor was the land utilized as a tree farm. Brunetti v. Lacey Tp., 6 N.J.Tax 565 (Tax Ct.1984.) I also find that the subject property did not produce any agricultural or horticultural products which had been sold in 1984 and that this failure was not the result of the land’s having been left fallow for a period of time in order to improve the soil for subsequent crops. Additionally, I find, as testified by Messer, that the activity and use of the property in 1984 was no different from that which *283 existed since July 1983; however, I do not have sufficient facts to make a determination of the property’s use prior thereto.
The taxpayer initially argues that proof of farmland inactivity of previously qualified farmland does not automatically trigger the rollback tax provisions of the statute, citing as support Jackson Tp. v. Paolin, 181 N.J.Super. 293, 3 N.J.Tax 39, 437 A.2d 344 (Tax Ct.1981). The facts in this case are markedly different from Paolin. There, it was held that the rollback statute was not triggered where a farmer by reason of his illness failed to sufficiently farm the land to continue its qualification. Therein testimony was presented that the property had been a recognized farm for many years. For the year in question, the farmer had become ill and although crops had been planted and sales made, the trial judge found that the minimum qualifications of the act had not been met. Id., 181 N.J.Super. at 300, 3 N.J.Tax at 46, 437 A.2d 344. This court concludes that Paolin stands for the proposition that where previously qualified farmland continues in farmland activity but fails to meet the minimum income requirements by reason of the farmer’s illness (thereby losing its farmland assessment for that year) it is not subject to rollback taxes. See Hamilton Tp. v. Lyons Estate, 8 N.J.Tax 112 (Tax Ct.1986). If Paolin is deemed to hold otherwise as proposed by defendant, this court declines to follow it.
By reason of this court’s failure to find that the subject land’s use in 1984 was different from its 1983 use, the issue now presented for determination is the validity of the taxpayer’s claim that by reason of the Legislature’s utilization of the words “change in use” in § 23.8, for rollback taxes to be applied it must first be established that the use of the property for the tax year 1984 was different from its use in prior years. It argues that in order to justify imposition of the rollback statute the taxing district has the burden to establish that the inactivity of the property in 1984 was a “change” from its 1983 use.
*284 For many years prior to 1984 the subject property was assessed as farmland. No appeal from any of these annual determinations was taken by either the taxing district or the taxpayer. For those years the taxpayer had the benefit of special reduced real estate tax treatment. Now that the taxpayer’s property is claimed by the municipality to be applied to a use other than agricultural or horticultural, it is taxpayer’s position that before triggering the rollback statute the taxing district must establish that in those prior years the land was used differently. By reason of the unusual facts in this case this proposition requires that the taxing district must in effect prove that the land properly qualified as farmland in those prior years; i.e., establish that it was actively applied to farming. The rollback statute was adopted to allow a municipality to recapture some of the tax savings granted to owners of previously qualified farmland by imposing on the owner the full tax burden in the year of the land’s application to a non-agricultural use and in the immediately preceding two years. Andover Tp. v. Kymer, 140 N.J.Super. 399, 405, 356 A.2d 418 (App.Div. 1976). If defendant’s proposed interpretation were accepted, where a landowner incorrectly receives a farmland assessment, the taxing district could never recapture any of the tax reductions if subsequently the non-agricultural use, no matter what it may be, is not a change. This certainly is not the intent of either our Constitution or the rollback statute.
Initially, only those lands actively devoted to agricultural or horticultural uses and meeting the additional qualifications as specifically prescribed in N.J.S.A. 54:4-23.6 are eligible for the preferential treatment allowed by the act. Thereafter, when land previously qualified as farmland is no longer applied to such use, the Constitution specifically mandates the imposition of rollback taxes by requiring “[a]ny such laws [adopted by the Legislature] shall provide that when land has been valued in this manner for local tax purposes is applied to a use other than for agriculture or horticulture it shall be subject to [rollback taxes].” N.J.Const. (1947), Art. VIII, § 1, ¶ 1(b); emphasis supplied. In implementing this clause the Legislature *285 repeated its obligatory language, declaring “when the land ... is applied to a use other than agricultural or horticultural, it shall be subject to ... rollback taxes____” N.J.S.A. 54:4-23.8. Thus, both the Constitution and the statute unequivocally mandate in clear and unambiguous language that when previously qualified land is not applied to an agricultural or horticultural use it becomes subject to rollback taxes.
The words “change in use” as subsequently utilized in the rollback statute are general words which are abbreviated references to the rollback requirements set forth in the prior paragraph of this section and they must be read together. Under the ejusdem generis rule of statutory construction, general words following specifically named things of a particular class must be understood as limited to things of such class or at least of the same general character. Denbo v. Moorestown Tp., 23 N.J. 476, 129 A.2d 710 (1957).
The recognized rule of statutory construction is that the intent of the Legislature is to be derived from the entire document. The meaning of the general words will be restricted whenever this is necessary to carry out the legislative intention. [DeFazio v. Haven Savings & Loan Ass’n, 22 N.J. 511, 518, 126 A.2d 639 (1956); citations omitted]
The Legislature by use of the prior language “when land has been valued in this manner [qualified farmland] ... is applied to a use other than agriculture or horticulture,” presumes that if land has been taxed as farmland, it was taxed lawfully because it was “actively devoted” as required by the statute; therefore, when the land subsequently is not applied to an agricultural or horticultural use, by operation of law a “change in use” has occurred. Accord Hinck v. Wall Tp., 3 N.J.Tax 96 (Tax Ct.1981). (where woodland having only marginal value to a farm was severed and conveyed, “change in use” occurred, even though there was no use change to the severed portion of the land which remained woodland). To interpret this statutory language otherwise would render this implementing statute unconstitutional. In interpreting a statute implementing a constitutional mandate, it is presumed that the Legislature acted with the constitutional law in mind and intended the act to function in a constitutional manner.
*286 Even though a statute may be open to a construction which would render it unconstitutional or permit its unconstitutional application, it is the duty of this Court to so construe the statute as to render it constitutional if it is reasonably susceptible to such interpretation. [State v. Profaci, 56 N.J. 346, 350, 266 A.2d 579 (1970); citation omitted]
 As directed by the rollback provisions of both the Constitution and the Farmland Assessment Act of 1964, to qualify for rollback taxes a taxing district must only prove: (1) the land in the alleged rollback year or in the two years immediately preceding has been specially taxed as farmland under the act; and, (2) in that year the land has not been applied to agriculture or horticulture use.[2] The municipality contends that the rollback provisions of the act were triggered in 1984. It is admitted that the subject land has been assessed as qualified under the act for the years 1982, 1983 and 1984; therefore, the rollback statute’s first requirement has been met. To be determined is whether the land’s use in 1984 was other than agricultural or horticultural. Land deemed in “agricultural” and “horticultural” use has been defined by the Legislature as:
Land shall be deemed to be in agricultural use when devoted to the production for sale of plants and animals useful to man, including but not limited to: forages and sod crops; grains and feed crops; dairy animals and dairy products; poultry and poultry products; livestock, including beef cattle, sheep, swine, horses, ponies, mules or goats, including the breeding and grazing of any or all of such animals; bees and apiary products; fur animals; trees and forest products; or when devoted to and meeting the requirements and qualifications for payment or other compensation pursuant to a soil conservation program under an agreement with an agency of the Federal Government. [N.J.S.A. 54:4-23.3]
Land shall be deemed to be in horticultural use when devoted to the production for sale of fruits of all kinds, including grapes, nuts and berries; vegetables; nursery, floral, ornamental and greenhouse products; or when devoted to and meeting the requirements and qualifications for payments or other compensation pursuant to a soil conservation program under an agreement with an agency of the Federal Government. [N.J.S.A. 54:4-23.4]
*287 I find that at no time during the calendar year 1984 was the subject property applied to either an agricultural or horticultural use as defined by the above statutes; hence, the second requirement of the rollback statute also has been met thereby subjecting the land to rollback taxes.
The “change in use,” as herein interpreted, having occurred in 1984 the taxing district is granted judgment for rollback assessments of $549,000 for the year 1984 and the two preceding years.

 Although Messer testified the subject property is owned by a partnership, it evidently is assessed in the name of Edythe Messer, who, individually, was named as defendant before the county board and in this proceeding.

 It is not intended to imply that land continued in agricultural use which is permitted to lie fallow to improve the land for future crops or fails to meet the minimum requirements of the act necessarily falls within this second requirement.