The opinion of the court was delivered by
ANDREW, J.T.C.
In this local property tax matter plaintiff, South Brunswick Township, asserts that the Middlesex County Board of Taxation wrongfully denied rollback tax assessments for the years 1983, 1984 and 1985 on properties owned by defendant, Bellemead Development Corporation. The properties in question are known and designated as Block 80, Lots 3.022 and 3.04 on the tax map of South Brunswick Township and together comprise a total of 48.368 acres.
The parties have stipulated to, and agreed that this case be decided on the basis of, the following facts. Plaintiffs properties (henceforth property) received preferential assessment under the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq., for the tax years 1983, 1984 and 1985. Under an arrangement not detailed in the stipulation of facts, in order to qualify for farmland assessment, Bellemead Development relied upon the activities of a tenant farmer. In 1985, however, without providing Bellemead Development with prior notice, the farmer ceased all farming activity on the property. On October 9, 1985, Bellemead Development notified the South Brunswick Tax Assessor, Eli Serlenga, that all farming activity on the property had ceased.
Based on Bellemead Development’s notice and a subsequent inspection of the property, Serlenga then mailed to defendant two separate notices of assessment of rollback taxes for the years 1983, 1984 and 1985 for Lots 3.022 and 3.04.[1] Throughout 1985 the land remained in nonuse.[2] For 1986 Bellemead Development did not apply for farmland assessment, and during 1986 its property was not in agricultural use.
The sole issue in this case is whether in 1985 the nonuse of, or cessation of agricultural use on, plaintiff’s property is suffi *619 dent to trigger the imposition of rollback taxes.[3] In arguing for the imposition of rollback taxes, the township relies primarily upon the Tax Court decision in Environmental Protection Dep’t v. Franklin Tp., 181 N.J.Super. 309, 3 N.J.Tax 105, 437 A. 353 (Tax.Ct.1981), aff'd o.b. 5 N.J.Tax 476 (App.Div.1983). In Franklin Tp. the Tax Court held that a change from agricultural use to nonuse is sufficient to trigger rollback taxes. On the other hand, in arguing against the imposition of rollback taxes, Bellemead Development appears to rely primarily upon the Tax Court decision in Jackson Tp. v. Paolin, 181 N.J.Super. 293, 3 N.J.Tax 39, 437 A.2d 344 (Tax Ct.1981). According to Bellemead Development, Paolin stands for the proposition that, in order to incur rollback taxes, land must first be “actively devoted” to a use other than farming.
A brief discussion of the Farmland Assessment Act will clarify the parties’ disagreement. Generally, the act grants preferential assessment to land “actively devoted to agricultural ... use.” N.J.S.A. 54:4-23.2. In separate provisions, the act then defines “agricultural use”:
Land shall be deemed in agricultural use when devoted to the production for sale of plants and animals useful to man. [N.J.S.A. 54:4-23.2; emphasis supplied]
and “actively devoted”:
Land ... shall be deemed to be actively devoted to agricultural ... use when the gross sales of agricultural ... products produced thereon ... have averaged at least $500.00 per year____ [N.J.S.A. 54:4-23.5; emphasis supplied] [4]
Thus, even though not “actively devoted,” e.g., because of inadequate sales, so long as “devoted to the production for sale of plants and animals,” land is in “agricultural use” pursuant to the act.
*620 Separately defined, and capable of independent existence, the terms “agricultural use” and “actively devoted” have separate and independent consequences for farmland assessment. To qualify for preferential assessment, land must be “actively devoted” to “agricultural use.” N.J.S.A. 54:4-23.5. For purposes of determining rollback tax liability, on the other hand, the central concept is “agricultural use,” and the phrase “actively devoted” does not play a role. Rollback, or additional, taxes apply as follows:
When land which is in agricultural ... use and is being valued, assessed and taxed under the provisions of this act, is applied to a use other than agricultural ..., it shall be subject to additional taxes, hereinafter referred to as roll-back taxes, in an amount equal to the difference, if any, between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had the land been valued, assessed and taxed as other land in the current year (the year of change in use) and in such of the Ü tax years immediately preceding, in which the land was valued, assessed and taxed as herein provided. [N.J.S.A. 54:4-23.8; emphasis supplied]
The controversy in this case arises because plaintiff asserts, and defendant denies, that the change from agricultural use to nonuse on defendant’s property constitutes an application to a use other than agricultural, i.e., a change in use, pursuant to N.J.S.A. 54:4-23.8.[5] In order to resolve the controversy, it is necessary to review the act itself, its underlying policies and the decisional law interpreting the act.
As we have seen, the precise terms of the act support the proposition that, even though no longer eligible for farmland assessment, so long as still in agricultural use, land is not subject to rollback taxes. Not surprisingly, case law provides additional support for the same proposition. See Burlington Tp. v. Messer, 8 N.J.Tax 274, 283 (Tax Ct.1986) and Hamilton *621 Tp. v. Lyons Estate, 8 N.J.Tax 112 (Tax Ct.1986) (both stating that, even though no longer meeting the income requirements of “active devotion,” land in “agricultural use” is not subject to rollback taxes); see also Franklin Tp., supra, 3 N.J.Tax at 128; and Belmont v. Wayne Tp., 3 N.J.Tax 382, 385 (Tax Ct.1981) (both holding that, although it removes eligibility for preferential assessment, failure to file an application for farmland assessment pursuant to N.J.S.A. 54:4-23.6 does not incur rollback taxes).
However, the Tax Court has further held that, for purposes of rollback taxes, a cessation of use is amply sufficient to constitute a change in use. In Lyons Estate, supra, the court stated that “[a]ny changes whereby land is no longer devoted to ... agricultural ... use subjects the land to roll-back taxes.” 8 N.J.Tax at 118. Similarly, in Messer, supra, the court concluded that both the State Constitution, N.J. Const. (1947), Art. VIII, § 1, par. 1(b) and N.J.S.A. 54:4-23.8 require that nonuse trigger rollback taxes. 8 N.J.Tax at 285. And again, in the opinion plaintiff relies upon, the Tax Court held:
The purpose of the Farmland Assessment Act would clearly be frustrated if a change from agricultural use to nonuse did not constitute a change in use, and the Legislature could not have intended such a result. [Franklin Tp., supra, 3 N.J.Tax at 132, n. 7]
Finally, even when land has remained in a single continuous use, the Tax Court has found a “change in use” and imposed rollback taxes. Hinck v. Wall Tp., 3 N.J.Tax 96 (Tax Ct.1981). In Hinck, even though not itself in agricultural use (and consequently not “actively devoted”),[6] because related to qualifying land, marginal land had initially qualified for farmland assessment. See Andover Tp. v. Kymer, 140 N.J.Super. 399, 404, 356 A.2d 418 (App.Div.1976). However, when sold and no longer required for the maintenance of qualifying land, the once marginal land lost its qualifying relationship and incurred rollback taxes. Significantly, neither the absence of an applica *622 tion to a different use, nor the absence even of a cessation of use, prevented the Tax Court from finding a change in use. See Hinck, supra, 3 N.J.Tax at 104.
Bellemead Development, nevertheless, responds that in Paolin, supra, in order to find a change in use, the Tax Court required “an active conversion from one positive type of land use to another.” 3 N.J.Tax at 49. Although the court in Paolin did use some language suggesting that nonuse alone was insufficient to incur rollback taxes, subsequent decisions have demonstrated the limited nature of the holding in Paolin. See Angelini v. Upper Freehold Tp., 8 N.J.Tax 644, 651 (Tax Ct.1986) (“not farming is different from farming and constitutes a change.”). Paolin, properly understood, stands for the proposition that, so long as continuing in agricultural use, even though failing to meet the income requirements of active devotion, previously qualified farmland is not subject to rollback taxes. Lyons Estate, supra, 8 N.J.Tax at 118, Messer, supra, 8 N.J.Tax at 283, and Angelini, supra, 8 N.J.Tax at 651.[7]
*623 Moreover, as the court in Franklin Tp. has indicated, failure to impose rollback taxes here would defeat the purposes not only of rollback taxes, but also of farmland assessment in general. The primary objective of the Farmland Assessment Act is to encourage the preservation of farmland by providing for the preferential assessment of land devoted to agricultural or horticultural use.[8] Franklin Tp. v. Environmental Protection Dep’t, 8 N.J. Tax 559 (Tax Ct.1986); Mt. Hope Mining Co. v. Rockaway Tp., 8 N.J. Tax 570 (Tax Ct.1986); Urban Farms, Inc. v. Wayne Tp., 159 N.J.Super. 61, 67, 386 A.2d 1357 (App.Div.1978); East Orange v. Livingston Tp., 102 N.J.Super. 512, 532-534, 246 A.2d 178 (Law Div.1968), aff'd o.b. per curiam 54 N.J. 96, 253 A.2d 546 (1969); Andover Tp. v. Kymer, 140 N.J.Super. 399, 404, 356 A.2d 418 (App.Div.1976); N.J.Turnpike Auth. v. Washington Tp., 137 N.J.Super. 543, 546, 350 A.2d 69 (App.Div.1975), aff'd o.b. 73 N.J. 180, 373 A.2d 652 (1977). See also Report of the Governor’s Farm Land Assessment Committee (March 20, 1983).
An integral part of farmland assessment, rollback taxes were enacted to protect municipalities from land speculators. Thus, while preferential assessment is designed to provide farmers with an incentive to continue farming, rollback taxes are designed “to discourage the land speculator.” Andover Tp. v. Kymer, 140 N.J.Super. 399, 405, 356 A.2d 418 (App.Div.1976); Paolin, supra, 3 N.J.Tax at 48; Franklin Tp., supra, 3 N.J.Tax at 117, and Paz v. DeSimone, 139 N.J.Super. 102, 106, 352 A.2d 609 (Ch.1976). See also Report of Governors Com *624 mittee, supra; Senate Committee on Revision and Amendment of Laws, Public Hearing on S.C.R. 16, “Taxation of Lands Used in Agriculture or Horticulture,” at 3 (April 15, 1963), and John A. Waddington’s Letter to Governor Richard J. Hughes (March 20, 1963).
Not imposing rollback taxes here, however, would encourage land speculators to purchase, hold and then either resell or develop farmland without ever incurring rollback taxes.[9] Corporations like Bellemead Development, for example, could conceivably convert and develop preferentially assessed farmland and never pay rollback taxes. Thus, by increasing the economic incentives of land speculation, the denial of rollback taxes for nonuse would increase the rate of conversion of farmland to nonfarmland use.
Finally, the Legislature itself has expressed an intent that a change from agricultural to nonuse constitutes a change in use. According to N.J.S.A. 54:4-23.15:
Liability to the roll-back tax shall attach when a change in use of the land occurs but not when a change in ownership of the title takes place if the new owner continues the land in agricultural ... use, under the conditions prescribed in this act. [Emphasis supplied]
Thus, whether or not land is under new ownership, the Legislature has indicated that, when land is no longer in agricultural use, a change in use has occurred.
In sum, not only the case law, but also the provisions and underlying objectives of the Farmland Assessment Act, *625 compel the conclusion that a change from agricultural to non-use constitutes a change in use pursuant to N.J.S.A. 54:4-23.8. Therefore, the Clerk of the Tax Court is directed to enter judgment reversing the Middlesex County Board of Taxation’s denial of rollback taxes for the years 1983, 1984 and 1985. The judgment shall reflect the uncontroverted computations made in the notices of assessment of rollback taxes as follows:
Block 80, Lot 3.022
1983
Regular Assessment $ 382,390
Less Farmland Assessment 14,500
Additional Assessment $ 367,890
1984
Regular Assessment $ 382,390
Less Farmland Assessment 14,500
Additional Assessment $ 367,890
1985
Regular Assessment $2,294,340
Less Farmland Assessment 26,800
Additional Assessment $2,267,540
Block 80, Lot 3.04
1983
Regular Assessment $ 101,290
Less Farmland Assessment 3,800
Additional Assessment $ 97,490
1984
Regular Assessment $ 101,290
Less Farmland Assessment 3,800
Additional Assessment $ 97,490
*626 1985
Regular Assessment $1,012,900
Less Farmland Assessment 7,000
Additional Assessment $1,005,900

 The parties do not dispute the computations made in the notices of assessment of rollback taxes. See N.J.S.A. 54:4-23.8.

 Plaintiff has not claimed that during 1985 defendant used its land at all.

 The disposition of this issue is limited to the facts of the present case, namely, (1) until the time of change to nonuse, the land had received farmland assessment and (2) defendant’s fields have not lain fallow in anticipation of future farming activity.

 Because they are not relevant to the issue here in question, I have omitted several elements of the definition of “actively devoted.”

 Intended to clarify the term "current year,” the phrase "change in use” is synonymous with, and neither broadens nor narrows, the phrase "applied to a use other than agricultural.” See Jackson Tp. v. Paolin, 181 N.J.Super. 293, 3 N.J.Tax 39, 47, n. 2, 437 A.2d 344 (Tax.Ct.1981). Any other interpretation of "change in use" would violate the constitutional mandate to impose rollback taxes when land “is applied to a use other than for agriculture...." See N.J. Const. (1947), Art. VIII, § 1, par. 1(b)

 Tautologically, unless "in agricultural use” pursuant to N.J.S.A. 54:4-23.2, land cannot be “actively devoted to agricultural ... use” pursuant to N.J.S.A. 54:4-23.5.

 In Paolin, the land in question failed to qualify for farmland assessment because an aged, one-legged farmer was no longer capable of meeting the income requirements of "active devotion." For purposes of farmland assessment, however, actual use, and not the circumstances of either the farmer or owner of the land, controls. See Urban Farms, Inc. v. Wayne Tp., 159 N.J.Super. 61, 68, 386 A.2d 1357 (App.Div.1978) (intent of the Farmland Assessment Act is to tax land devoted to agricultural use only at its value for that use and not at its value for an intended or prospective higher use); Andover Tp. v. Kymer, 140 N.J.Super. 399, 356 A.2d 418 (App.Div.1976) (although taxpayer may be holding the land for eventual resale or for speculation, because it was in agricultural use and was actually "devoted to the production for sale of plants," the land was entitled to farmland assessment); N.J. Turnpike Auth. v. Washington Tp., 137 N.J.Super. 543, 551, 350 A.2d 69 (App.Div.1975), aff'd o.b. 73 N.J. 180, 373 A.2d 652 (1977) (change in use and not change in ownership determines whether land continues to be eligible for farmland assessment); Terhune v. Franklin Tp., 107 N.J.Super. 218, 258 A.2d 18 (App.Div.1969) (even if it constitutes part of the minimum lot size for the farmhouse, because actually used for agriculture, the land was entitled to farmland assessment); Centex Homes, Inc. v. Manalapan, 4 N.J. Tax 599 (Tax Cf.1982), certif. granted 94 N.J. 517, 468 A.2d 175 (1982), remanded to App.Div. 95 N.J 218, 470 A.2d 433 (1983) (app. dism. upon stipulation May 24, 1984) (because farmland assess *623 ment depends on actual or current use, municipal law imposing rollback taxes upon preliminary subdivision, site plan or planned development approval violates preferential treatment afforded farmland in Art. VIII, § 1, p. 1(b), of the New Jersey Constitution), and Hinck, supra (even if transferred to a new owner or split off from the farm property, so long as it continues in farmland use, land may retain its farmland status).

 Other important but clearly secondary or incidental purposes are to save and preserve New Jersey’s open space and beautiful countryside and to case the assessors’ difficulties. See Franklin Tp. v. Environmental Protection Dep’t, 8 N.J. Tax 559 (Tax Ct.1986).

According to N.J.S.A. 54:4-23.8, rollback taxes constitute:
an amount equal to the difference, if any, between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had the land been valued, assessed and taxed as other land in the taxing district, in the current tax year (the year of change in use) and in such of the 2 tax years immediately preceding, in which the land was valued, assessed and taxed as herein provided. [Emphasis supplied]
Consequently, if a change to nonuse did not incur rollback taxes, by keeping once preferentially assessed farmland in nonuse for three or more years before development, speculators might be able to prevent municipalities from ever collecting rollback taxes. See Eagle Plaza Assocs. v. Voorhees Tp., 6 N.J.Tax 582, 593 (Tax Ct.1984).