**O'DONNELL McCORD, P.C.**
Jason A. Cherchia Esq. (114622014)
15 Mount Kemble Avenue
Morristown, New Jersey 07960
T: (973) 538-1230
F: (973) 538-3301
Attorneys for Defendant, Township of Holmdel

| | |
|---|---|
| BALMER, CAROLE J. DICK., <br><br><br> Plaintiffs, <br><br> -vs- <br><br> TOWNSHIP OF HOLMDEL, <br><br><br><br> Defendant. | TAX COURT OF NEW JERSEY <br> DOCKET NS.: 014488-2015 <br><br><br> CIVIL ACTION <br><br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

**THIS MATTER** having been opened to the Court by Jason A. Cherchia, Esq., Special Tax Counsel for the Defendant, the Township of Holmdel, for an Order Dismissing Taxpayer's Complaint, and on Plaintiff's motion for summary judgment, McKirdy, Riskin, Olson & Dellapelle, P.C. appearing; and the Court having reviewed the moving papers and any opposition submitted thereto, and having heard oral argument; and for good cause appearing,

**IT IS** on this 6th day of December, 2019,

**ORDERED** that Plaintiff's Motion for Summary Judgment is hereby denied, and Defendant's Cross-Motion for Summary Judgment is hereby granted;

**IT IS FURTHER ORDERED** that Taxpayer's Complaint be and hereby is Dismissed, With Prejudice.

_____
JOAN BEDRIN MURRAY, J.T.C.

THIS MOTION WAS _X__ OPPOSED ___ UNOPPOSED

1

A LETTER OPINION IS ATTACHED HERETO AND INCORPORATED HEREIN.

NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

# TAX COURT OF NEW JERSEY

Joan Bedrin Murray
Judge



Bergen County Justice Center
10 Main Street, Room 201
Hackensack, New Jersey 07601
(609) 815-2922 Ext. 54660

December 9, 2019

Jason A. Cherchia, Esq.
O'Donnell McCord P.C.
15 Mt. Kemble Avenue
Morristown, New Jersey 07960

Thomas M. Olson, Esq.
McKirdy, Riskin, Olson & Dellapelle, P.C.
136 South Street
P.O. Box 2379
Morristown, New Jersey 07962

> Re:    Carole J. Dick Balmer v. Township of Holmdel
>        Block 9, Lot 17.4
>        <u>Docket No. 014488-2015</u>

Dear Counsel:

This is the court's opinion with respect to the motion for summary judgment filed by plaintiff, Carole J. Dick Balmer ("plaintiff"), and the cross-motion for summary judgment filed by defendant, Township of Holmdel ("defendant"). Ms. Balmer seeks to vacate the Judgment of the Ocean County Board of Taxation imposing rollback taxes for tax years 2012 and 2013. The thrust of her argument is that a temporary cessation of farming on the above-captioned property ("subject property"), absent using it for another purpose, does not constitute a change in use, and is not sufficient to trigger the farmland rollback assessment provisions of N.J.S.A. 54:4-23.8. Next,

3

plaintiff asserts that the imposition of rollback taxes in this matter runs contrary to the legislative history of N.J.S.A. 54:4-23.8. Defendant, conversely, urges that plaintiff's cessation of farming on the property does, in fact, constitute a change in use, and is sufficient to trigger farmland rollback taxes as a matter of law. For the reasons set forth below, plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted.

## I.    Findings of Fact

The material facts are undisputed. The subject property is located in Holmdel Township at 96 Middletown Road, and is designated as Block 9, Lot 17.04 on the Tax Map of the Township of Holmdel. The subject consists of approximately twelve acres of land that was assessed as farmland up to and including tax year 2013, and includes plaintiff's primary residence. An inspection by Holmdel's tax assessor revealed that the barn had collapsed and was no longer in use, weeds and tall grass covered the bulk of the property, and there was no farming equipment or farming activity in sight. Plaintiff advised the tax assessor that she did not intend to resume farming activity on the subject property, although the record reveals she initially considered the cessation of farming to be temporary. Plaintiff offers that she became ill at the same time her farmer retired, and she was unable to replace him. As such, she did not seek farmland assessment for tax year 2014 or later.

On or about August 21, 2015, defendant filed a complaint with the Monmouth County Board of Taxation ("County Board") seeking to invoke rollback taxes on the subject. The basis for the relief was that the subject property had a change in use in 2014, namely, that there had been an abandonment of farming. On September 9, 2015, the County Board issued a judgment granting the imposition of rollback taxes in the amount of $12,426.07 for tax year 2013, and in the amount of $11,357.06 for tax year 2012, totaling $23,783.13. On October 28, 2015, plaintiff filed the instant appeal alleging that there was no such abandonment nor change in use of the property in

4

tax year 2014. In short, plaintiff concedes that the property was not being farmed, but maintains that it was not converted to any other use, and remained vacant and available for farming.

## II. **Analysis**

### A. The Standard for Determining Ripeness for Summary Judgment

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). An issue of fact is genuine "only if considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid. Although the evidence is to be viewed most favorably toward the non-moving party, summary judgment may not be denied simply because the non-movant demonstrates the existence of a disputed fact. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540-41 (1995). Rather, denial is appropriate only where the evidence is of such a quality and quantity that reasonable minds could return a finding favorable to the party opposing the motion. Id. at 534, 540.

Here, the record reveals the absence of genuine issues of material fact. Hence, the matter is ripe for determination in a summary manner.

### B. Relevant Legislative and Case Law

N.J.S.A. 54:4-23.1 to 23.23, known as the Farmland Assessment Act of 1964 ("Act"), grants preferential tax treatment to property that is actively devoted to agricultural or horticultural use, as well as providing for recoupment by the local taxing authority in the event of a change in

5

use.  The Act derives from a mandate set forth in an amendment to the New Jersey Constitution, effective December 5, 1963, which states in pertinent part:

> The Legislature shall enact laws to provide that the value of land, not less than 5 acres in area, which is determined by the [tax assessor] to be actively devoted to agricultural or horticultural use . . . shall, for local tax purposes, on application of the owner, be that value which such land has for agricultural or horticultural  use.

> Any such laws shall provide that when land which has been valued in this manner . . . is applied to a use other than for agriculture or horticulture it shall be subject to additional taxes in an amount equal to the difference, if any, between the taxes paid . . . and the taxes that would have been paid  or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had the land been valued and assessed as otherwise provided in this Constitution, in the current year and in such of the tax years  immediately preceding, not in excess of 2 such  years in which the land was valued as herein authorized.

New Jersey Const., Art. VIII, § I, Par. 1(b).


In general, the Act provides preferential treatment to land ". . . not less than 5 acres in area, which is actively devoted to agricultural or horticultural use and which has been so devoted for at least the 2 successive years immediately preceding the tax year in issue. . . ."  N.J.S.A. 54:4-23.2. In order for land to be deemed in "agricultural use," it must be "devoted to the production for sale of plants and animals useful to man. . . ."[1]  N.J.S.A. 54:4-23.3.  Land is deemed to be in horticultural use when it is "devoted to the production for sale of fruits of all kinds, including

---

[1] By way of example, the statute lists forages and sod crops, grains and feed crops, dairy animals and dairy products, poultry and poultry products, among other items.

grapes, nuts and berries; vegetables; nursery, floral, ornamental and greenhouse products. . . ."[2]

N.J.S.A. 54:4-23.4. As to the meaning of "actively devoted," the Act provides that "land, five acres in area, shall be deemed to be actively devoted to agricultural or horticultural use when the amount of the gross sales of [such] products produced thereon . . . have averaged at least $1,000 per year during the two-year period immediately preceding the tax year in issue . . . ." N.J.S.A. 54:4-23.5(a).[3]

The Act defines "actively devoted" and "agricultural use" in separate provisions because the terms have "separate and independent consequences for farmland assessment." So. Brunswick Tp. v. Bellemead Dev. Corp., 8 N.J. Tax 616, 620 (Tax Ct.1987). In order to qualify for preferential assessment under the Act, the property must be "'actively devoted' to 'agricultural use.'" Ibid. (citing N.J.S.A. 54:4-23.5). In short, eligibility for farmland assessment turns on the phrase "actively devoted". Ibid. Here, there is no dispute that the property ceased being actively devoted to farming and was no longer eligible for preferential treatment.

Instead, the challenge arises from the imposition of rollback taxes, which are mandated by the Act in the event of a change from "agricultural use", separate and apart from any consideration of the concept of "actively devoted". Ibid. N.J.S.A. 54:4-23.8 provides in pertinent part:

> When land which is in agricultural . . . use and is being valued, assessed and taxed under the provisions of P.L. 1964, c. 48 (C. 54:4-23.1 et seq.), is applied to a use other than agricultural . . . , it shall be subject to additional taxes, hereinafter referred to as roll-back taxes, in an amount equal to the difference, if any, between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or

---

[2] Also, land "devoted to and meeting the requirements and qualifications for payments or other compensation pursuant to a soil conservation program under an agreement with an agency of the Federal Government," may qualify as land deemed to be in horticultural use. N.J.S.A. 54:4-23.4.

[3] This section also allows for lesser required gross sales in the case of woodland use or with regard to payments received under a soil conservation program, among other activities apart from agricultural or horticultural use; however, such provisions are not applicable to the instant matter. As such, all references hereinafter shall be to agricultural use only.

> payable had the land been valued, assessed and taxed as other land in the taxing district, in the current tax year (the year of change in use) and in such of the two tax years immediately preceding, in which the land was valued, assessed and taxed as herein provided.

Thus, while a property will forfeit its preferential farmland assessment due to falling short of the minimum gross sales in the "actively devoted" requirement, it will avoid rollback taxes provided it remains in agricultural use. See Hamilton Tp. v. Lyons Estate, 8 N.J.Tax 112 (Tax Ct.1986) ("The sole criterion is the use of the land. Any change, whereby the land is no longer devoted to actual agricultural . . . use, subjects the land to roll-back taxes."). (citing N.J. Turnpike Auth. v. Washington Tp., 137 N.J. Super. 543, 350 A.2d 69 (App. Div. 1975), aff'd. o.b. 73 N.J. 180, 373 A.2d 652 (1977). See also Burlington Tp. v. Messer, 8 N.J.Tax 274, 283 (Tax Ct.1986).

In plaintiff's case, farming ceased. While she asserts the property remained vacant and available for farming, it was no longer devoted to actual agricultural use. The fact that the land was available for farming at that time or sometime in the future is immaterial; it is present use that is critical. N.J. Turnpike Auth. v. Washington Tp., supra, 137 N.J. Super. at 551, 350 A.2d 69; Hamilton Tp. v. Lyons Estate, supra, 8 N.J.Tax at 120.

In urging that there was no change from agricultural use, plaintiff relies on Jackson Tp. v. Paolin, 3 N.J.Tax 39 (Tax Ct.1981). There, the aging farmer fell ill and was unable to meet the income requirements for reduced assessment. The court found there was a modicum of farming activity, describing the property as "under-utilized". Id. at 54. In short, the court concluded rollback taxes were unwarranted as the farmer's failure to actively farm the property did not constitute a use other than agriculture, and was not a change in use of the property within the intendment of the Act. Ibid.

Plaintiff urges that as in Paolin, there was no change in the use of the property, and rollback taxes should not be imposed. The facts in this case, however, are different from Paolin. There,

8

farmland activity continued but due to the farmer's illness, did not produce income sufficient to support preferential treatment. Here, farming was abandoned. The barn had collapsed and the property was covered in weeds. There was no farmer in place. While illness was a factor in both cases, the use of the land is the critical distinguishing element. In plaintiff's case, the use of the land was no longer agricultural.

Our courts have rejected arguments interpreting Paolin as holding that a cessation of farming, temporary or otherwise, does not automatically trigger rollback taxes. In Burlington Tp. v. Messer, supra, 8 N.J.Tax at 283, the court succinctly concluded that Paolin "stands for the proposition that where previously qualified farmland continues in farmland activity but fails to meet the minimum income requirements by reason of the farmer's illness (thereby losing its farmland assessment for that year) it is not subject to rollback taxes", brushing aside the broader suggested interpretation. Id. Other courts have also viewed Paolin through a narrow lens. In South Brunswick Tp. v. Bellemead Dev. Corp., supra, 8 N.J.Tax at 622 (Tax Ct.1987), the court dismissed the suggestion that Paolin required a conversion from one type of land use to another in order to find a change in use. The court in Angelini v. Upper Freehold Tp., 8 N.J.Tax 644, 651 (Tax Ct.1986), interpreted Paolin as holding that rollback taxes are not triggered as long as there is farming activity, despite one's inability to actively devote property to agricultural use. See also Hamilton Tp. v. Lyons Estate, supra, 8 N.J. Tax at 118.

In sum, the court cannot conclude that Paolin, applied to the facts in this matter, supports plaintiff's argument that there was no change from agricultural use.

Moreover, our courts have vigorously held that when land is no longer devoted to agricultural use, a change in the use of the property occurs, triggering rollback taxes. Hamilton Tp. v. Lyons Estate, supra, 8 N.J. Tax at 118; Burlington Tp. v. Messer, supra, 8 N.J. Tax at 284

9

("If [the] proposed interpretation were accepted. . . the taxing district could never recapture any of the tax reductions if subsequently the non-agricultural use, no matter what it may be, is not a change. This certainly is not the intent of either our Constitution or the rollback statute."); Dep't of Envtl. Prot. V. Franklin Tp., 3 N.J. Tax 105, 132 n.7 (1981) ("The purposes of the Farmland Assessment Act would clearly be frustrated if a change from agricultural use to nonuse did not constitute a change in use, and the Legislature could not have intended such a result."). See also So. Brunswick Tp. v. Bellemead Dev. Corp., supra, 8 N.J. Tax at 624 n.9 ("Consequently, if a change to nonuse did not incur rollback taxes, by keeping once preferentially assessed farmland in nonuse for three or more years before development, speculators might be able to prevent municipalities from ever collecting rollback taxes.") (citing Eagle Plaza Assocs. V. Voorhees Tp., 6 N.J. Tax 582, 593 (1984)). Further, in Angelini v. Upper Freehold Tp., supra, 8 N.J. at 650, the court held that the purpose of the rollback provisions is to require a property owner to pay back to the municipality the sum of the benefit derived from the farmland assessment, once farmland activity ceases. (Emphasis included).

In addition, the plain meaning of N.J.S.A. 54:4-23.8 leads to the conclusion that nonuse of farmland is a change in use for the property. N.J.S.A. 54:4-23.8 uses the phrase "change in use" on two occasions in the statute. A dictionary definition of the verb "change" is "to make different in some particular: alter." https://www.merriam-webster.com/dictionary/change. Applying this definition to the phrase "change in use" in N.J.S.A. 54:4-23.8, it follows that doing something different would constitute change. "Not farming is different from farming and constitutes a change." Angelini v. Upper Freehold Tp., supra, 8 N.J. Tax at 651; see also Burlington Tp. v. Messer, supra, 8 N.J. Tax at 285 ("The Legislature by use of the prior language 'when land has been valued in this manner [qualified farmland] . . . is applied to a use other than agricultural . . .'

10

presumes that if land has been taxed as farmland, it was taxed lawfully because it was 'actively devoted' as required by the statute, therefore, when the land subsequently is not applied to an agricultural . . . use, by operation of law a 'change in use' has occurred.")

Along with arguing that plaintiff's temporary cessation of farming is insufficient to trigger rollback taxes under the Act, plaintiff also asserts that the imposition of rollback taxes violates the Act's legislative intent. The crux of the Act is to "encourage farming and to give the farmer some tax relief." Angelini v. Upper Freehold Tp., supra, 8 N.J. Tax at 650. "When farming ceases, not only should farmland assessment cease, but the property owner should return to the municipality the benefits he received. . ." Id. at 651. The main objective of the Act is to encourage the preservation of farmland, and also to protect municipalities from land speculators. Id. at 623.

In addition, both the New Jersey Constitution and N.J.S.A. 54:4-23.8 clearly and unambiguously state that a previously qualified land not being used for agricultural use will be subject to rollback taxes. N.J. Const., Art. VIII, Sec. I, Para. 1(b)[4]; N.J.S.A. 54:4-23.8. "When the wording of a statute is clear and explicit, a court is not permitted to indulge in any interpretation other than that called for by the express words set forth." Dep't of Envtl. Prot. V. Franklin Tp., supra, 3 N.J. Tax at 120 (citing Duke Power Co. v. Patten, 20 N.J. 42, 49 (1955)). Along with the clear and unambiguous wording of N.J.S.A. 54:4-23.8, the Legislature expressed an intent that nonuse of a qualified property under the Act is a change in use. So. Brunswick Tp. v. Bellemead Dev. Corp., supra, 8 N.J. Tax at 624.

The generally recognized rule of statutory construction is that "the intent of the Legislature is to be derived from the entire document." Burlington Tp. v. Messer, supra, 8 N.J. Tax at 285 (citing DeFazio v. Haven Savings & Loan Ass'n., 22 N.J. 511, 518 (1956)). In looking at the Act

---

[4] "Any such laws shall provide that when land which has been valued in this manner for local tax purposes is applied to a use other than for agriculture or horticulture it shall be subject to additional taxes . . . ."

as a whole, N.J.S.A. 54:4-23.15 is helpful in interpreting the Legislature's intent as to N.J.S.A. 54:4-23.8. The Legislature stated that "[l]iability to the roll-back tax shall attach when a change in use of the land occurs but not when a change in ownership of the title takes place *if the new owner continues the land in agricultural . . . use*, under the conditions prescribed in this act." (Emphasis added). N.J.S.A. 54:4-23.15. The Legislature makes clear that a previously qualified property that is no longer in agricultural use establishes a change in use that will incur rollback taxes. Simply put, "[t]he Legislature has indicated that, when land is no longer in agricultural use, a change in use has occurred." So. Brunswick Tp. v. Bellemead Dev. Corp., supra, 8 N.J. Tax at 624.

In addition, if rollback taxes were not imposed on previously qualified land for nonuse of the land, then the Legislature's objective of discouraging land speculators would be thwarted. Ibid. ("Not imposing rollback taxes . . . would encourage land speculators to purchase, hold and then either resell or develop farmland without ever incurring rollback taxes . . . Thus, by increasing the economic incentives of land speculation, the denial of rollback taxes for nonuse would increase the rate of conversion of farmland to nonfarmland use."). Ibid.

Lastly, it has been recognized that "exemptions from rollback tax, as with all forms of tax exemption, are not favored by law." Dep't of Envtl. Prot. V. Franklin Tp., supra, 3 N.J. Tax at 119. Such exemptions are a departure from the fundamental principle in property taxation that all properties should bear their fair share of the tax burden. Ibid. (citing Princeton Univ. Press v. Princeton, 35 N.J. 209, 214 (1961)). Tax exemptions should be strictly construed, "with all doubts being resolved against the claimant." Ibid. Furthermore, legislation that provides favorable rates to some taxpayers, while increasing the tax burden on others, should be "construed to exist only when such a legislative intent is clear and unmistakable." Ibid. In sum, the court concludes that

the legislative history of the Act does, in fact, support the imposition of rollback taxes in this matter, contrary to plaintiff's assertions.

Based on the foregoing, the court concludes that the imposition of rollback taxes on the subject property for tax years 2012 and 2013 is appropriate. Accordingly, summary judgment is granted in favor of defendant, Township of Holmdel. Plaintiff's motion for summary judgment is denied. An order accompanies this opinion.

Very truly yours,

*Joan Bedrin Murray*

Hon. Joan Bedrin Murray, J.T.C.