DICKINSON GARDINER AND FRANCES L. GARDINER, PLAIN-
TIFFS, v. STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Law Division Gloucester County

Decided August 15, 1984.

*Martin F. Caulfield,* for plaintiffs (*Hannold, Caulfield, Marshall & McDonnell,* attorneys).

*Robert L. Heugle, Jr.,* for defendant (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

MILLER, EDWARD S., J.S.C.

In this case which is apparently of first impression, the court is required to determine whether rollback taxes imposed under the authority of *N.J.S.A.* 54:4–23.8 must be imposed upon the owner of farmland condemned by the State of New Jersey under its powers of eminent domain, *N.J.S.A.* 20:1–1, *et seq.,* or whether the additional taxes imposed shall be borne by the State. The facts are simple and uncontroverted.

Plaintiffs were the owners of certain land in Deptford Township, Gloucester County, New Jersey, which was required by the State for use as a portion of a proposed state highway, Route 55. This land, while adjacent to a residential district, was utilized as a single-family residence with farmland and was subject to special treatment under the Farmland Assessment Act of 1964, *N.J.S.A.* 54:4–23.1 *et seq.*

It being determined by the State that a portion of plaintiffs' lands were required for extension of Route 55, the State exercised its power of eminent domain, *R.S.* 20:3–1 *et seq.,* and filed a declaration of taking as to the subject lands. Contemporaneously therewith, an action was properly filed under the condemnation statute. That action is still pending in a separate proceeding in this court.

Following the declaration of taking, the Township of Deptford applied to the Gloucester County Board of Taxation for a determination that the portion of plaintiffs' land taken, amount-

ing to 2.76 acres, is no longer eligible for farmland assessment and is subject to rollback taxes.

The county board made the determination that the portion taken is no longer eligible for farmland assessment and is subject to rollback taxes. Taxes were thereafter assessed by the Township of Deptford, the assessment satisfying neither the owners nor the State and a separate proceeding is pending in the New Jersey Tax Court as to the correctness and valuation of said assessment.

To resolve the dispute as to whether the additional taxes chargeable under the statute should be paid by the State or by the owners, the owners filed this action seeking an adjudication by this court that the rollback taxes in question are the obligation of the State of New Jersey as the taker and not of the plaintiffs as the former owners.

The State filed an answer and upon the return day of an order to show cause, it was agreed by counsel that the facts were undisputed and that the court should proceed to settle this matter as if on cross-motions for summary judgment. It now devolves upon the Court to pronounce that judgment which it conceives the law requires.

There is surprisingly little judicial treatment of this question.

The Farmland Assessment Act, (hereinafter the act) *N.J.S.A.* 54:4–23.1 *et seq.*, was enacted pursuant to a constitutional mandate whose primary purpose was to encourage the maintenance and preservation of farmland. *Andover Township v. Kymer*, 140 *N.J.Super.* 399, 404 (App.Div.1976); *Terhune v. Franklin Township*, 107 *N.J.Super.* 218, 220–221 (App.Div. 1969). The value of land for farming is usually less than its value for other purposes. The act intended to counter the adverse impact of taxation on farmland by assessing the land based on the lower valuation. *Terhune*, 107 *N.J.Super.* at 220. In extending this special tax treatment to qualifying landowners, the Legislature sought to provide farmers the incentive to continue to farm, thereby discouraging development of rural

lands through land speculation. *See Paz v. DeSimone*, 139 *N.J.Super.* 102, 106 (Ch.Div.1976).

■ Along with the lower valuations under the act, the Legislature provided for additional taxes when land which had been valued under the act is converted to a use other than agricultural or horticultural. The applicable statute provides:

> When land which is in agricultural or horticultural use and is being valued, assessed and taxed under the provisions of this act, is applied to a use other than agricultural or horticultural, it shall be subject to additional taxes, hereinafter referred to as roll-back taxes, in an amount equal to the difference, if any, between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had the land been valued, assessed and taxed as other land in the taxing district, in the current tax year (the year of change in use) and in such of the 2 tax years immediately preceding, in which the land was valued, assessed and taxed as herein provided. [*N.J.S.A.* 54:4–23.8]

Rollback taxes were designed to protect the municipality from pure speculation by returning to its coffers *some of the tax benefits the owner received* while the land qualified under the act. *Report of Governor's Farmland Assessment Comm.* 1 (March 20, 1963); emphasis supplied.

As hereinabove stated and as emphasized by Judge Gruccio in *Paz v. DeSimone, supra,* the concept of farmland assessment and special tax treatment was intended to give the farmer the incentive to continue to farm his land *and to discourage the land speculator. See* also to *State v. Washington Tp.,* 73 *N.J.* 182 (1977) where the Supreme Court decided that rollback taxes imposed by the county board were correct but declined to adjudicate the respective liabilities between the State and its predecessor in title.

Bearing in mind the general principles enunciated in the above cited cases, it seems clear that the thrust of the statute is designed to prevent speculation and to penalize such speculation. Once this is realized, the analysis becomes simple. These plaintiffs were not land speculators, they did not engage in either a change of use or a placing of the property on the market, but it was forcibly taken from them, albeit lawfully, by

the process of condemnation permitted under the powers of eminent domain but nevertheless against their will. It is fair to state that had the plaintiffs had their way, there would have been no litigation and they would have been peacefully in possession of the farmland in question to this date.

Since plaintiffs can by no means be denominated land speculators, but rather the involuntary conveyors of the title in question, it is clear that the thrust of the statute was not directed at them.

██ It is therefore apparent that the thrust of the rollback taxes must be borne by the State and not by plaintiffs as the preceding owners in title. This is buttressed by the observation that it is the land itself which is the subject of taxation and not the owners of the land, who are the subject of taxation. In the case of condemnation, as here, no change of use was made by the seller but the land was in effect taken out of circulation by the action of the State. The logical result is that the State must bear all rollback taxes, the sellers being completely free of any such obligation. This renders the question of apportionment unnecessary and judgment will be entered adjudicating that the State is liable as hereinabove set forth.