**NOT FOR PUBLICATION WITHOUT APPROVAL OF**
**THE TAX COURT COMMITTEE ON OPINIONS**

**TAX COURT OF NEW JERSEY**



**MALA SUNDAR**
**PRESIDING JUDGE**

Richard J. Hughes Justice Complex
P.O. Box 975
Trenton, New Jersey 08625-0975
609 815-2922, Ext. 54630 Fax 609 376-3018

May 25, 2022

Michael L. Collins, Esq.
King, Moench, Hirniak, Mehta & Collins LLP
Attorney for Plaintiff

Susan L. Solda De Simone, Esq.
Attorney for Defendant

> Re:   Diamond Developers at Burke Farm, LLC v. Township of Manalapan
>        Block 69, Lots 8.01; 9
>        Docket No. 012593-2021

Dear Counsel:

This opinion decides whether the assessor for defendant, Township of Manalapan, (Township) properly imposed added assessments for tax years 2020 (prorated for three months) and 2021 on the above referenced properties (Subject) on grounds the Subject was no longer tax exempt, and was not actively devoted to agricultural use during those years under the Farmland Assessment Act (FAA). Plaintiff, which moved for partial summary judgment, argues that its inability to comply with the requirements of the FAA was involuntary in that the Subject was forfeited to, thus, owned by the federal government during 2020 and until March 2021, therefore, the added assessments are inequitable. The Township opposed the motion contending that the Subject's nonuse in either tax year 2020 or 2021, was a change in use, therefore, the added assessments were properly imposed under N.J.A.C. 18:15-3.3.

For the reasons below, and based on the unique facts and equities, the court finds that the Subject's assessment as farmland should be continued for tax years 2020 and 2021. Therefore, it grants plaintiff's partial summary judgment motion.

**FACTS**

The Subject comprises of two contiguous parcels, about 97.3 acres in total. Plaintiff has owned the Subject since 2004. For several years, plaintiff annually timely applied for, and the Township's assessor annually approved the Subject for farmland assessment. For tax year 2019, the Subject was also farmland assessed (Lot 8.01 at $100; Lot 9 at $54,500).

In September 2014, Andrew Lucas (one of plaintiff's members), was convicted of certain federal crimes commencing in 2009, including loan application fraud.[1] On May 6, 2015, the federal court for the District of New Jersey entered a preliminary order of forfeiture based on its findings that the Subject was purchased using proceeds of Mr. Lucas' criminal offenses. The preliminary order forfeited to the federal government, "all of [Mr. Lucas'] right, title, and interest" in the Subject "for disposition according to law" subject to claims of third parties.

On June 15, 2015, plaintiff filed a petition in the District Court asserting a superior interest in the Subject due to its purchase of the Subject in 2004 which predated Mr. Lucas' criminal acts. The District Court dismissed the petition and granted the government's summary judgment motion in this regard on August 20, 2019.

On August 22, 2019, the District Court entered a final order of forfeiture, giving the federal government all "right, title and interest" in the Subject for "disposition according to law," and in this regard, the ability "to warrant good title to any subsequent purchaser or transferee." A copy of the forfeiture order was duly recorded in the Monmouth County Clerk's office.

---

[1] On March 25, 2013, plaintiff granted a development easement and all the nonagricultural development rights on the entire Subject for a consideration of $1,158,024 to the Monmouth County Agriculture Development Board under the Agriculture Retention and Development Program (for preservation of farmland). The easement permanently restricts the Subject for "agricultural use and production" under New Jersey laws, and bars any development for nonagricultural purposes. Apparently, the individual improperly used the Subject to obtain funds under the Program.

On or about September 15, 2019, the U.S. Marshals Service posted the forfeiture orders on the Subject, as well as "no trespassing" signs. By letter of October 1, 2019, it advised the Township that the federal government "took title" to the Subject under the August 22, 2019, final forfeiture order, however, since the federal government has sovereign immunity from paying state/local taxes, the Subject should "be removed from the tax roll as of August 22, 2019." The federal government would however pay any tax due up to August 22, 2019. The Township's assessor accordingly moved the Subject into the tax-exempt list of properties and carried forward the farmland assessment in this regard.

Plaintiff appealed the District Court's denial of its petition against the forfeiture and grant of summary judgment to the government. Oral argument was held by the Court of Appeals for the Third Circuit on September 10, 2020. On January 20, 2021, the court, in a written opinion, ruled that plaintiff "held valid title to [the Subject] years before the Government obtained an interest because of Andrew Lucas's crimes." It entered a judgment reversing and vacating the lower court's judgment "against" plaintiff. This then effectively returned title of the Subject, nunc pro tunc, to plaintiff.

Plaintiff's member, Edward Lucas, certified that plaintiff thereafter contacted the U.S. Marshals Service to determine if plaintiff could repossess and use the Subject despite the signage (forfeiture order/no trespassing) still on site. The U.S. Marshals Service directed plaintiff to the U.S. Attorney's Office for a response, however, removed the forfeiture orders posted on the Subject in March 2021.[2] Because of this, and upon advice of its counsel, plaintiff's member

---

[2] Per plaintiff's complaint, by letter dated July 21, 2021, the U.S. Marshals Service advised the Township that the Subject "should be put back on the county tax roll" due to the reversal of the forfeiture order by the Third Circuit. The letter referenced the vacation order was on "09/10/2020 and filed 1/20/2021." However, the September date was when oral argument of plaintiff's appeal to the Third Circuit was heard.

certified that active farming resumed at the Subject from March 20, 2021, onwards. Activities included rebuilding a destroyed driveway; cutting; disking; plowing; and planting of the then fallow weed-ridden fields, all of which were completed within a month. Since then, and the Township concedes, plaintiff has continued to actively devote the Subject to agricultural/horticultural use in accordance with the FAA's requirements.[3]

On August 31, 2021, the Township's assessor e-mailed plaintiff advising that the Subject would receive an added assessment "[d]ue to the decision by the US Marshalls" and that he would "be using the most recent arms lengths sales of preserved farmland to determine valuation." Plaintiff promptly queried the basis for this since the US Marshals Service "undid the legally wrong action - nunc pro tunc," and as plaintiff owned the Subject "for 18 years." The Township's assessor replied that the Subject "is going from exempt to taxable and I have been advised that an added assessment must be applied in this situation."

On September 7, 2021, the Township's assessor sent plaintiff notices of the added assessments on the Subject as follows: Lot 8.01 - $9,725 (3-month period for tax year 2020) and $38,900 (all of tax year 2021); Lot 9 - $292,882 (3-month period for tax year 2020) and $1,171,530 (all of tax year 2021). The tax on the added assessments totaled $31,434.87, which plaintiff paid.

Plaintiff timely appealed the added assessments to this court. Its complaint contained three counts: (1) Added Assessment Invalid Due to Improper Classification; (2) Improper Duration of Added Assessment; and (3) Improper Valuation. It then moved for partial summary judgment on Counts I and II. It conceded that while an added assessment may be appropriate if the Subject

---

[3] In July of 2021, plaintiff timely filed an application for farmland assessment for tax year 2022. The assessor granted the application by his November 15, 2021 assessment notices, classifying the lots as farmland, and assessing Lot 8.01 at $100 and Lot 9 at $54,000. The Township has appealed these assessments to the Monmouth County Board of Taxation.

"went from exempt to taxable," nonetheless, it should continue to be farmland assessed for tax years 2020 and 2021 under the court's equitable powers and principles of equitable estoppel.

The Township opposed the motion claiming that since the Subject was not actively devoted to agricultural use during the forfeiture period, the added assessments were properly imposed under N.J.A.C. 18:15-3.3. Else, it maintained, the Township is being unfairly deprived of tax revenue, which then unfairly prejudices the Township's taxpayers.

**ANALYSIS**

The issue is whether plaintiff's lack of use of the Subject for purposes permitted under the FAA due to the governmental forfeiture, justifies imposition of added assessments for tax years 2020 and 2021 or whether the involuntary forfeiture requires continuance of farmland assessment for these tax years. The forfeiture order, its challenge by plaintiff, and its reversal are uncontested. It is also undisputed that the federal government never put the Subject to any use, or alternative use, nor sold/transferred it. The parties agree that the Subject was not actively devoted to agricultural uses from September 2019 until March 2021. There being no material facts in genuine dispute, the court finds that resolution of the issue by way of partial summary judgment is appropriate. See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520 (1995).

The FAA, N.J.S.A. 54:4-23.1 to -23.23, grants preferential assessment to property that is (i) not less than five acres; (ii) actively devoted to agricultural or horticultural use; (iii) and actively so devoted for at least two continuous years prior to the tax year at issue. N.J.S.A. 54:4-23.2. The property owner must file annual applications for farmland assessment by August 1 of the pretax year, or if extended, by September 1 of the pretax year. N.J.S.A. 54:4-23.2; 4-23.6.

Although the phrases "agricultural use," "horticultural use" and "actively devoted" are separately defined (the "use" focusing on plethora of activities, while "actively devoted" focusing

5

on income to be generated from such activities), see N.J.S.A. 54:4-23.3; 4-23.4; 4-23.5, "[t]autologically, unless in agricultural use . . . land cannot be actively devoted to agricultural . . . use." Twp. of South Brunswick v. Bellemead Dev. Corp., 8 N.J. Tax 616, 621, n.6 (Tax 1987) (internal quotations marks omitted).

If land use is changed from agriculture to some other use, preferential assessment ceases. The property will then be treated like any other taxable vacant land. Two methods are used to achieve this. One is by imposing rollback taxes for the year of the change in use and the two immediately preceding years. See N.J.S.A. 54:4-23.8 ("additional taxes" imposed when "land which is in agricultural or horticultural use and is being" farmland assessed "is applied to a use other than agricultural or horticultural").

The other is imposing an added assessment for the year of change. See N.J.S.A. 54:4-23.13 (if there is a change in use after the application for farmland assessment is filed, but "notwithstanding such change of use," the land is farmland assessed "in the ensuing year," then the assessor should "enter . . . an added assessment" on the land "in the 'Added Assessment List' for the particular year involved in the manner prescribed" by the added assessment provisions, N.J.S.A. "54:4-63.1 et seq.").[4] See also N.J.A.C. 18:15-3.3 (b)(2) (same); 18:15-8.2(c) (providing an example of a "change in use . . . on November 15, 2016" that is not discovered "by the assessor or the county board of taxation until June 1, 2017," in which case, an "added assessment against the land on the 'Added Assessment List' for 2017" should be entered); Division of Taxation, Handbook for New Jersey Assessors, 517 (rev'd April 2021) (a timely application is filed July 2017 but "use of land changes" in November 2017 and unknown until June 2018, then "[a]n Added

_____

[4] "If a change in use of land occurs between August 1 and December 31 of the pretax year," then the assessor or the county board of taxation should deny the farmland assessment application. N.J.S.A. 54:4-23.13.

Assessment . . . [should] be made for the tax year 2018"). Such added assessment should be for the full tax year and "is not subject to proration." Ibid.[5]

The phrase "change of use" is defined as follows:

> when land that is being assessed under the [FAA] is subsequently used for something other than agricultural or horticultural purposes . . . Cessation of farming may be considered a change of use. However, an immaterial change of use is not necessarily a change of use if the dominant use remains agricultural or horticultural. Rotating crops or land use, or leaving land fallow for one year or less, may not be a change of use.
>
> [N.J.A.C. 18:15-1.1 (cross referencing N.J.A.C. 18:15-8).]

While the instant matter involves an added assessment, not rollback taxes, the basis for imposition of either is the same: a change in land use. Therefore, precedent interpreting what constitutes a "change in use" in the context of rollback taxes would also apply for an added assessment. That precedent holds that nonuse, i.e., cessation of farming, is a change in use. See generally Twp. of South Brunswick, 8 N.J. Tax at 624-25 and cases cited therein. Note also that generally a change in ownership is irrelevant for FAA purposes unless there is a change in use. See N.J.S.A. 54:4-23.15 ("Continuance of valuation, assessment and taxation under this act shall depend upon continuance of the land in agricultural or horticultural use and . . . not upon continuance in the same owner of title to the land"). Thus, "[l]iability to the roll-back tax shall

---

[5] The added assessment statutes, N.J.S.A. 54:4-63.1 to -63.11a, allow for a proration. If property is improved after the October 1 valuation date and completed *before* January 1 of the tax year, then the assessor must re-determine the property's value and enter the excess or the redetermined assessment "as an assessment or an added assessment" on the Added Assessment List, on a prorated basis for the remaining months in the pretax year. N.J.S.A. 54:4-63.2. If the property is improved after the October 1 valuation date and completed *after* January 1 of the tax year, the same process follows except the proration is for the remaining months *in the tax year*. N.J.S.A. 54:4-63.3. In either case, the assessments should be entered in the added assessment list, the tax collector should then send a tax bill to the property owner which is due November 1 of the "year of levy," and the owner must appeal the added assessment by December 1 of "the year of levy" or 30 days from the date of bulk mailing of the tax bills. N.J.S.A. 54:4-63.5 to -63.11.

attach when a change in use of the land occurs but not when a change in ownership of the title takes place if the new owner continues the land in agricultural or horticultural use." Ibid.

Here, the Township contends that the Subject was not actively devoted to agricultural use, and therefore did not qualify for farmland assessment as of September 2019. Plaintiff concedes that the Subject, which is over five acres, could not be actively farmed but only because the federal government owned the Subject, and due to this ownership, it could not file an application for farmland assessment for either tax year. It is undisputed that the federal government did nothing with the Subject for purposes of the FAA during its ownership of the Subject. Thus, facially, the Subject is ineligible for farmland assessment for tax years 2020 and 2021. Further, and deeming the assessor's carryforward of the farmland assessment on the tax-exempt list to be a grant of farmland assessment for the Subject, an added assessment under N.J.S.A. 54:4-23.13 would be appropriate since there was a change in use after August 1 of the pretax year for tax year 2020 and tax year 2021 (i.e., the nonuse existed after August 1, 2019, and after August 1, 2020).[6]

Plaintiff agrees that an added assessment is appropriate when the Subject "went from exempt to taxable." However, it argues, it cannot be unfairly imposed, i.e., with zero consideration to the unique facts of this matter. Rather, and because the nonuse was completely involuntary, the Subject should be assessed as farmland during the forfeiture period. The Township contends that either a land is eligible for farmland assessment, or it is not. If as here, it is not, the inquiry ends.

Almost all the cases on rollback taxes strictly construe the "change in use" phrase and opine that cessation of farming or other agricultural activity, even if temporary, is a change in use, and

---

[6] It is unclear why the added assessment for tax year 2020 is prorated for 3 months since the Subject was owned by the federal government and in nonuse for the entire 12-month period. Nor is it clear why there was no proration for tax year 2021 since plaintiff resumed ownership in January of 2021 and began farming in March of 2021, and the Township was advised by the U.S. Marshal's Service in July 2021 to place the Subject back on the tax list.

the landowner must therefore pay additional taxes. The only published case which involves equitable consideration of the facts is Twp. of Jackson v. Paolin, 3 N.J. Tax 39, 54 (Tax 1981) ("It is difficult to imagine that the intent of any rollback provision was to impose an extra tax burden on a landowner who simply grew old or became disabled and no longer could actively devote his property to agriculture" since this would run counter to the "primary" goal of the FAA: "preserve the family farm in this State"). Subsequent cases have either distinguished Paolin, or restricted its reach. See generally Twp. of South Brunswick, 8 N.J. Tax at 624-25 and cases cited therein.

However, in the context of a governmental taking of land which was farmland assessed until the taking, courts have uniformly ruled that the change in use is attributable only to the condemnor therefore equity requires it pay the rollback taxes. For instance, in Gardiner v. State, 196 N.J. Super. 529, 533 (Law Div. 1984), the court held that where farmland assessed property was condemned, the property owners were not land speculators, but had "involuntary[ily] convey[ed]" land to the State, therefore, "the thrust of the [FAA] was not directed at them" for purposes of rollback taxes. The court noted that in a "condemnation . . . no change of use was made by the seller but the land was in effect taken out of circulation by the action of the State." Ibid. The court concluded that rollback taxes should be borne by the condemnor especially where "it is the land itself which is the subject of taxation and not the owners of the land, who are the subject of taxation." Ibid. See also Board of Educ. v. Eckert, 361 N.J. Super. 238, 246-247 (App. Div. 2003) (when "[t]he condemning authority chose to condemn a farm for its use," it should "bear the cost of such condemnation including tax obligations that are imposed as a matter of law"). The court also noted that while change in use "in the context of land speculation" implies voluntariness and "willingness of the seller-land owner" to a use change justifies rollback taxes, this is not so in condemnation where "[o]nly . . . power of eminent domain intervened to cause" a

9

change, therefore, there is "no unfairness in imposing the burden of such change on the condemning authority rather than the reluctant landowner." Id. at 245-46. Cf. Paz v. De Simone, 139 N.J. Super. 102, 108 (Ch. Div. 1976) (the "triggering of the imposition of the roll-back taxes is in the hands of the buyer," thus where after sale, the seller has no right to "use of the property," rather, any use is "totally the prerogative of the buyers," it is inequitable to burden the seller with rollback taxes especially where the buyer is a speculator); Angelini v. Twp. of Upper Freehold, 8 N.J. Tax 644, 651 (Tax 1987) ("The conscious determination to terminate farming is a change in use resulting in the imposition of rollback taxes").

Here, akin to a condemnation situation, there was an involuntary change in ownership via the federal government's forfeiture. After this, plaintiff had no control over the title, possession, and use of the Subject, thus simply could not have complied with the FAA's requirements for obtaining annual farmland assessments. The Subject's nonuse during the forfeiture period was attributable solely to the federal government as to which plaintiff had no say (other than by diligently litigating its right to own, possess, and use the Subject). In other words, the Subject could not be actively devoted to agricultural use due to the government's actions: the seizure by the federal government and the U.S. Marshals Service's enforcement of the same (posting signs on the Subject as to the forfeiture and non-trespass). While the Third Circuit's reversal and vacation of the final forfeiture order reverted the Subject to plaintiff nunc pro tunc, it cannot be ignored that plaintiff was not able to actually use the Subject for farming until after the reversal.

The Township argues that plaintiff could have retained the farmland assessment status by asking the government permission to continue farming during pendency of the forfeiture litigation since "it is common for public lands to be privately farmed." It is unclear how this "common" solution would have worked since an application for farmland assessment should be filed "by the

10

owner of" the land, N.J.S.A. 54:4-23.6, not by someone farming the land such as, for example, a tenant farmer. See also Board of Educ., 361 N.J. Super. at 248 ("unrealistic" to expect condemnee to continue farming the condemned property into the "planting season" when the condemnor's "course of conduct" such as obtaining a zoning change and entering the property for soil testing, prevented such farming). As plaintiff points out, even after the Third Circuit's decision, it took awhile for the forfeiture/no trespassing signs to be removed although plaintiff actively pursued the U.S. Marshals Service on when it could retake possession and use of the Subject.

It is true that the Gardiner line of cases speak only to who must pay the rollback (additional) taxes after an involuntary taking of a farmland assessed property, and that the State/local government or governmental authority can and should be liable for rollback taxes. They do not bar the imposition of an added assessment when there is a change in use, nor address a situation where the government cannot be required to pay taxes. See also Board of Educ., 361 N.J. Super. at 249 ("the narrow holding of Gardiner applies since "change from farm use to a public purpose" for condemnation which "prompts the imposition of roll-back taxes, requires that the burden of such change be borne by the condemnor").

However, if equity demands that the government bear the tax burden when farmland assessed property is involuntarily taken, then, the same equity can also apply to require non-enforcement of a facially appropriate added assessment, against the hapless landowner for a period that its ownership, possession, and use of the farmland assessed property was involuntarily seized by the government. Further, plaintiff resumed farming the Subject as soon as it was legally able to do so. This is in keeping with the Subject's consistent past use, as is also required by the 2013 easement whereby the Subject is deed restricted for agricultural use and production under New Jersey laws. All these factors allow for equities to be applied here. Therefore, and under the very

11

unique circumstances of this case, the court finds that continuation of farmland assessment for the Subject for tax years 2020 and 2021 is equitably justified.

The Township contends that not requiring plaintiff to pay taxes on the added assessment would penalize its residents who will bear the burden of lost tax revenue. However, there could not have been any realistic expectation of receiving any tax for either tax year 2020 or 2021, let alone additional tax, since the Township placed the Subject on the tax-exempt list in 2019 and removed it in July 2021 after being notified to do so by the federal government.[7]

Similarly, asking plaintiff to sue the federal government for the taxes resulting from the added assessments is trying to obtain indirectly what cannot be imposed directly: taxes from the federal government due to its sovereign immunity. See e.g. Rainhold Holding Co. v. Twp. of Freehold, 14 N.J. Tax 266, 271, 283 (Tax 1994) ("Since state law contains no exemption for the federal government [from local property tax], any such exemption must be found in . . . the doctrine of federal government immunity from state taxation" thus, when the incidence of local property tax is upon the property owner, and not on the United States Post Office's leasehold interest, "the federal government's immunity from state taxation is not infringed"), aff'd, 1995 N.J. Tax LEXIS 58 (App. Div. 1995). This is especially where plaintiff, as in the taking situations, had no control over the Subject's title, possession and use during the forfeiture period.

In sum, and based solely on the facts and equities of this case, the court finds that the Subject should not be retroactively denied farmland assessment via imposition of the added assessments for tax years 2020 and 2021. A literal reading of the FAA without taking into consideration the distinctive facts in this present matter will unjustifiably penalize the plaintiff,

---

[7] Nor is it guaranteed that the Township is entitled to the entire tax on the added assessments since plaintiff has challenged the valuation, and in that connection, the easement restriction could change the assessment amounts.

which had no control over the federal government's seizure of the title to, and possession and use of the Subject. The inability to comply with the FAA's requirements (annual application and use of the property for agricultural use) is fully attributable to the acts of the federal government's involuntary forfeiture of the Subject. Plaintiff should not be required to bear the tax consequences of the same simply because the federal government has sovereign immunity from paying state/local taxes. The Township is not prejudiced because it did not and could not rely upon the Subject generating any additional local property tax, since it was placed on the tax-exempt list from August 29, 2019, until at least July of 2021.

**CONCLUSION**

For the above reasons, the court grants plaintiff's partial motion for summary judgment as to Counts 1 and II of the complaint. Further proceedings will be conducted on Count III of the complaint (valuation). Although the Subject's valuation should be farmland assessed pursuant to this opinion, both parties should be given an opportunity to finalize the same. Refunds of taxes paid by plaintiff on the added assessment will be determined after conclusion of the valuation issue.[8]

Very truly yours,

/s/ Mala Sundar
Mala Sundar, P.J.T.C.

---

[8] Because the court concludes that the Subject should continue its farmland assessment for tax years 2020 and 2021, it does not need to reach the merits of plaintiff's contention that the Township should be estopped from imposing added assessments.

13